**UNITED STATES of America, Appellee,**

v.

**Robert M. JOOST, Defendant, Appellant.**

**No. 97–1519.**

United States Court of Appeals,
First Circuit.

Heard Dec. 3, 1997.

Decided Jan. 9, 1998.

---

William C. Dimitri, by appointment of the court, Providence, RI, with whom Robert M. Joost, pro se, was on brief, for appellant.

Margaret R. Curran, Assistant United States Attorney, with whom Sheldon Whitehouse, United States Attorney, and Kenneth P. Madden, Assistant United States Attorney, Providence, RI, were on brief, for the United States.

Before SELYA, STAHL and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

This appeal marks our second encounter with the government's accusation that defendant-appellant Robert M. Joost, a previously convicted felon, illegally possessed a firearm in violation of 18 U.S.C. § 922(g)(1).[1] A panel of this court erased Joost's initial conviction on this charge because the trial court failed to give an entrapment instruction. *See United States v. Joost,* 92 F.3d 7, 13–14 (1st Cir.1996) (*Joost I*). A new trial before a new judge and jury, properly instructed on entrapment, yielded the same result. This appeal followed.

We recounted the underlying facts in some detail in *Joost I,* 92 F.3d at 9–11, and it would be pleonastic to repeat them here.

---

1. The statute provides in relevant part:
 (g) It shall be unlawful for any person—
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

For context's sake, it suffices to note that Joost's present difficulties arose out of his relationship with two members of the Rhode Island State Police, Steven O'Donnell and Joseph DelPrete, who posed as petty thieves while investigating a counterfeiting operation. The relationship centered around the delivery of fake casino tokens by Joost to the undercover officers in exchange for cash. In the course of their dealings, Joost proposed several other criminal opportunities to the officers (including the robbery of an armored truck). At a later date, the officers requested that Joost provide a firearm for their use in a stick-up. After some prodding, Joost supplied a .25 caliber pistol.

Joost's entrepreneurship led to his arrest and indictment on several charges, including conspiracy to violate the Hobbs Act (a charge that derived from his role in planning the armored truck robbery) and the instant felon-in-possession charge. On Joost's motion, the charges were severed and the felon-in-possession count was tried alone.[2]

The first felon-in-possession trial was nullified by the first appeal, and need not concern us. At the second trial, Joost elected to proceed pro se. He staked his defense on a claim that O'Donnell and DelPrete had entrapped him into committing the offense. The jury bought none of it. On appeal, Joost, aided by the oral advocacy of appointed counsel, advances numerous assignments of error. We discuss seven of them, rejecting the remainder without editorial comment.

1. Joost stipulated that he had been convicted of a felony prior to the date of the alleged felon-in-possession offense. During the trial, he testified in his own defense. On cross-examination, the district court permitted the government to show the nature of the prior felony, which the government paraphrased as a "conspiracy to injure, oppress, threaten and intimidate a citizen of the United States in the free exercise and enjoyment of a right and privilege secured to him by the laws and Constitution of the United States, death. resulting." *See* 18 U.S.C. § 241.

Touting our decision in *United States v. Tavares*, 21 F.3d 1 (1st Cir.1994) (en banc), Joost assigns error.

■ In *Tavares*, we held that when a defendant who has been charged as a felon in possession offers to stipulate to the existence of an earlier felony conviction, the government ordinarily cannot adduce proof of the nature—as opposed to the fact—of that conviction for the purpose of establishing the status element of the offense. *See Tavares*, 21 F.3d at 4–5; *accord Old Chief v. United States*, —— U.S. ——, ——–——, 117 S.Ct. 644, 654–56, 136 L.Ed.2d 574 (1997). In this case, any *Tavares*-based objection was thrice waived.

Before trial, Joost articulated an objection which the district court understandably regarded as the functional equivalent of a general motion in limine aimed at circumscribing the government's use of his prior convictions. Judge Torres heard arguments on this motion after jury empanelment but before the taking of any evidence. Solicitous of the rights of the pro se defendant, the judge specifically inquired whether Joost sought to press an objection to the evidence that he now challenges. Joost demurred, stating: "I think I can't fault the Government for using that." Having thus conceded the point, Joost cannot now change course, at least without a compelling reason. *Cf. United States v. Coady*, 809 F.2d 119, 121 (1st Cir.1987) (refusing to permit counsel to deviate from his own prior representations to the trial court). Waiver also occurred when, during his direct examination, Joost voluntarily undertook to describe the prior felony to the jury, thereby inviting the government's subsequent cross-examination. A party who opens a door cannot be heard to complain that the adverse party strolled through the doorway. *See Gill v. Thomas*, 83 F.3d 537, 541 (1st Cir.1996); *see generally Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 101 (1st Cir.1997) (discussing doctrine). Finally, Joost did not register

---

**2.** In a separate trial, a jury found Joost guilty of participation in the Hobbs Act conspiracy. This court affirmed the conviction, *see United States v. Joost*, 94 F.3d 640 (1st Cir.1996) (Table) (*Joost*

*II* ). Joost currently is serving a twenty-year sentence imposed in consequence of that conviction.

a contemporaneous objection when the prosecution purposed to describe the conviction. This, too, constitutes a waiver. *See United States v. Griffin,* 818 F.2d 97, 99–100 (1st Cir.1987).

Based on this history, it is crystal clear that Joost's own conduct precludes him from challenging on appeal· the government's description of his prior conviction. Nor can we sweep these repeated procedural defaults under the rug simply because Joost was acting· without the benefit of counsel. A defendant in a criminal case is entitled to serve as his own attorney, but exercising a right of self-representation does not absolve the actor from complying with relevant procedural rules. *See Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975); *Eagle Eye Fishing Corp. v. United States Dep't of Commerce,* 20 F.3d 503, 506 (1st Cir.1994).

We hasten to add that, even were we to put these procedural defaults to one side, the government's mention of the nature of Joost's conviction during cross-examination did not contravene *Tavares. Tavares* stands for the general proposition that, when the prosecution proffers evidence of a predicate crime solely to satisfy the status element of a felon-in-possession charge and the defendant stipulates (or offers to stipulate) to the fact of the conviction, the nature of the conviction is ordinarily irrelevant and often unduly prejudicial. However, the *Tavares* rule does not apply if the nature of the conviction is relevant for an independent purpose. This is such a case.

Fed.R.Evid. 609(a) provides in pertinent part that, when the accused testifies in a criminal case, evidence that he has been convicted of a serious crime (i.e., a crime "punishable by death or imprisonment in excess of one year") shall be admissible to impeach his credibility "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." We have specifically endorsed the use of prior convictions for such

purposes in post-*Tavares* felon-in-possession cases.[3] *See, e.g., United States v. Powell,* 50 F.3d 94, 102 (1st Cir.1995); *United States v. Tracy,* 36 F.3d 187, 191–92 (1st Cir.1994); *see also Tavares,* 21 F.3d at 6 ("[I]n some cases evidence concerning the nature of the prior conviction will be admissible for impeachment or other reasons, despite its lack of probative value on the prior conviction element of the crime."). So it is here: the nature of the conviction was relevant for the independent purpose of impeaching the credibility of the testifying defendant, and therefore was admissible.

2. Joost next contends that the lower court erred in admitting evidence of his *Joost II* conviction for conspiracy to rob an armored truck in violation of the Hobbs Act, 18 U.S.C. § 1951. His point is that, because both the Hobbs Act and felon-in-possession charges arose out of the same overall course of events, the jury should not have been allowed to hear that another jury previously had rendered a guilty verdict on the Hobbs Act charge (and, by implication, had found troopers O'Donnell and DelPrete credible). Here again, the point is procedurally defaulted. Although Joost sought unsuccessfully to have his Hobbs Act conviction excluded via his pretrial motion in limine, he then failed to object when the prosecution brought the matter up in a live trial context. Merely making an unsuccessful motion in limine to exclude evidence is insufficient to preserve a claim of error; the protesting party ordinarily must revivify his opposition at the time the evidence is offered. *See Gill,* 83 F.3d at 541 (concluding that a party "cannot rely solely on his *in limine* objection to preserve the evidentiary issue for appeal"); *Griffin,* 818 F.2d at 105 (stressing that evidentiary objections normally are preserved for appeal only if the court rules "in the actual setting of· the trial"); *see also United States v. Noah,* 130 F.3d 490, 496 (1st Cir.1997).

---

**3.** Of course, the probative value of a conviction offered for impeachment purposes must be weighed against its potential for unfair prejudice. *See* Fed.R.Evid. 609(a)(1). But this proviso rarely will benefit a defendant who, like Joost, fails to

lodge a contemporaneous objection to the use of the evidence.· We need not probe this point too deeply, for we see no sign that the balance was sufficiently tipped in this instance.

■ In all events, we descry no error. The trial court, in the exercise of the substantial discretion that Fed.R.Evid. 609 confers, supportably determined that the probative value of the Hobbs Act conviction outweighed its potentially prejudicial effect. Hence, the conviction was admissible for impeachment purposes.[4]

■ 3. Joost's protests regarding the admission of testimony as to the reason he provided the firearm are unavailing. Having elicited much of the testimony himself, and not having objected contemporaneously to the rest, Joost cannot now be heard to challenge its admission on appeal. In any event, evidence related to Joost's motive for possessing the weapon clearly was relevant to rebutting his entrapment claim. Hence, its admissibility depends upon balancing probative worth and prejudicial impact under Fed.R.Evid. 403. We are on record that "[o]nly rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1340 (1st Cir.1988). This case falls within the general rule rather than the long-odds exception to it.

4. Joost also maintains that the district court should have dismissed the indictment based on the Speedy Trial Act (STA), 18 U.S.C. § 3161. In general, the STA requires the government to commence the retrial of a criminal defendant who has been successful on appeal no later than "seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). Nevertheless, the statute enumerates several periods of delay that are excludable from the speedy trial measure. *See* 18 U.S.C. § 3161(h). A number of these interludes are pertinent here.

■ The STA clock began to run on August 30, 1996 (the day after our mandate in *Joost I* became final). *See United States v. Mack*, 669 F.2d 28, 33 (1st Cir.1982).

Thirty-four countable days elapsed before Joost's then-counsel, Thomas Briody, moved to withdraw. Briody's motion stopped the STA clock, and the period of delay that ensued until the motion was resolved—the twenty-one days from October 3 to October 23—is excludable. *See, e.g., United States v. Parker*, 30 F.3d 542, 550 (4th Cir.1994) (stating that "the Courts of Appeals have repeatedly upheld exclusions for periods of delay during which district courts considered motions to withdraw as counsel"); *United States v. Hammad*, 902 F.2d 1062, 1064 (2d Cir.1990) (excluding period from filing of defense counsel's motion to withdraw until substitution of counsel); *cf. United States v. Rodriguez*, 63 F.3d 1159, 1163 (1st Cir.1995) (excluding period from filing of counsel's motion to appear pro hac vice until hearing on the motion).

On October 23, the court granted Briody's motion and appointed Louis Robbio as successor counsel. The court simultaneously continued the trial date for "a period not to exceed one hundred eighty days," upon a specific finding that "the ends of justice in extending the speedy trial time outweigh the interest of the public and the defendant in a sooner trial." The STA explicitly authorizes such continuances if needed to allow reasonable time for the defendant to obtain counsel or for new counsel effectively to prepare. *See* 18 U.S.C. § 3161(h)(8)(B)(iv); *see also United States v. Spring*, 80 F.3d 1450, 1457 (10th Cir.) (interpreting the statute to mean that "[a]dequate preparation time and continuity of counsel are clearly permissible reasons for granting a continuance and tolling the Speedy Trial Act"), *cert. denied*, —— U.S. ——, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996). The continuance that Judge Torres granted was reasonable and justified under the circumstances. Thus, the period from October 23 to December 9 is excludable. *See* 18 U.S.C. § 3161(h)(8)(A).

On December 9, in the midst of the continuance period, Robbio moved to withdraw for health reasons. This motion remained pend-

---

4. The government also argues that the evidence bore on Joost's lack of predisposition to procure the firearm—an element of the affirmative defense of entrapment. *See United States v. Gifford,* 17 F.3d 462, 468 (1st Cir.1994). Because the evidence was properly admitted for impeachment purposes, we need not address this argument.

ing until December 23, when the court held a hearing and granted it. As with Briody's motion to withdraw, the entire period of delay related to Robbio's withdrawal motion is excluded from the STA count.

During the same hearing, the court permitted Joost to proceed pro se at trial, and, to serve the ends of justice, renewed the outstanding continuance. Thus, no additional STA days accrued between December 23 and December 31, when Joost filed the dismissal motion that undergirds this assignment of error. Since only thirty-four days legitimately had been charged to the government up to that point, the trial court appropriately refused to dismiss the indictment.

5. We make short shrift of Joost's imbricated claims that the district court's jury instruction concerning the "in and affecting commerce" element of the crime of conviction was deficient, and relatedly, that the statute of conviction violates the Commerce Clause.

■ We set out the challenged instruction in the margin.[5] Persuasive authority supports the district court's refusal to give a more exacting charge. *See United States v. Blais*, 98 F.3d 647, 650 (1st Cir.1996) (upholding a substantially identical instruction), *cert. denied*, — U.S. —, 117 S.Ct. 1000, 136 L.Ed.2d 879 (1997); *see also Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (concluding that section 922(g) requires only "the minimal nexus that the firearm have been, at some time, in interstate commerce"); *United States v. Gillies*, 851 F.2d 492, 495 (1st Cir. 1988) (same).

■ Joost's constitutional argument is a dead letter. In *Joost I*, 92 F.3d at 14, we rejected that very argument and thus de-termined the law of the case. *See Cohen v. Brown Univ.*, 101 F.3d 155, 167 (1st Cir. 1996) (stating that the law of the case doctrine "precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided"); *United States v. Rivera–Martinez*, 931 F.2d 148, 150 (1st Cir.1991) (similar). Beyond that, the argument is "hopeless." *United States v. Bennett*, 75 F.3d 40, 49 (1st Cir.1996).

■ 6. Joost's next plaint implicates the district court's determinations that he was an armed career criminal within the meaning of 18 U.S.C. § 924(e). The government founded the "armed career criminal" designation on four Rhode Island breaking-and-entering convictions and the aforementioned conviction for conspiracy to violate another's civil rights. After conducting an evidentiary hearing, the district court determined that Joost fit the statutory description of an armed career criminal. We detect no trace of error in this conclusion. In all events, the evidentiary allegations that Joost hawks in this regard were squarely raised and decisively repudiated in *Joost I*, 92 F.3d at 14, and this claim is not open for further perscrutation. *See Cohen*, 101 F.3d at 167; *Rivera–Martinez*, 931 F.2d at 150.

■ 7. Joost's final assault draws a bead on the sentencing court's determination that his felon-in-possession sentence should not run entirely concurrently with the undischarged term of imprisonment imposed for the Hobbs Act conviction. This remonstrance is properly before us, but it lacks force. The district court sentenced Joost pursuant to U.S.S.G. § 5G1.3(c), as it appeared in the 1995 edition of the sentencing guidelines.[6] *See United States v. Harotuni-*

---

**5.** After reading the pertinent text of 18 U.S.C. § 922(g), *see supra* note 1, the court instructed the jurors that:

Possession of a firearm or ammunition is in or affecting commerce within the meaning of the statute[ ][i]f at some time after it was manufactured, and before the offense was committed, that firearm or ammunition was transported between states or between a state and a foreign country or a foreign country and state.

The Government doesn't have to prove that the firearm was in the Defendant's possession at the time it traveled in interstate or international commerce or at the time it crossed the state line. Possession of a firearm or ammunition that has moved in interstate commerce or in commerce between a foreign country and a state, at any time [,] is possession in or affecting commerce.

**6.** Section 5G1.3(c) states that, when applicable, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

*an,* 920 F.2d 1040, 1041–42 (1st Cir.1990) (explaining that, absent ex post facto concerns, the version of the guidelines in effect on the date of sentencing controls). Joost's essential argument is that the district court should not have employed section 5G1.3(c) at all, but should have employed U.S.S.G. § 5G1.3(b), which requires the concurrent discharge of two terms of imprisonment if the conduct that underlies one offense has been fully taken into account in determining the offense level for the other offense, and should have ordered the entire felon-in-possession sentence to run concurrently with the earlier Hobbs Act sentence.

 The choice between U.S.S.G. § 5G1.3(b) and U.S.S.G. § 5G1.3(c) usually turns upon the extent to which the two offenses are related, and such relatedness inquiries are necessarily fact-sensitive. Accordingly, appellate review is for clear error. *See United States v. Sheahan,* 31 F.3d 595, 599 (8th Cir.1994); *United States v. McCaskey,* 9 F.3d 368, 382 (5th Cir.1993); *see also United States v. Shewmaker,* 936 F.2d 1124, 1129 (10th Cir.1991) (using clear error standard to review "the district court's fact-intensive inquiry" into whether two offenses are related for the purpose of sentencing). The inquiry is informed by the core purpose of section 5G1.3(b): "to address the unfairness that would result from receiving a second sentence for activities that were considered as relevant conduct in a prior proceeding." *United States v. Kimble,* 107 F.3d 712, 714–15 (9th Cir.) (citation and internal quotation marks omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 2471, 138 L.Ed.2d 226 (1997).

In this case, Judge Torres eschewed section 5G1.3(b) because he found that the Hobbs Act and felon-in-possession offenses were distinct. That finding is not clearly erroneous. Indeed, nothing in the record indicates a necessary connection between the Hobbs Act and felon-in-possession offenses.[7] Joost obtained the weapon for O'Donnell and DelPrete to use in a stick-up on Cape Cod, not in the planned heist of the armored truck in Rhode Island. The discussions and actions that formed the bases of the two violations focused on different subjects and occurred in different time frames and at different places. Under these circumstances, we must uphold the district court's finding that the two offenses were not sufficiently interrelated to give rise to a mandatory concurrent sentence on the felon-in-possession charge. *See generally* U.S.S.G. § 1B1.3(a)(1) (defining relevant conduct to include actions "occurr[ing] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense"); U.S.S.G. § 1B1.3(a)(2) (stating that relevant conduct also includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction").

That ends the matter. Inasmuch as U.S.S.G. § 5G1.3(b) does not apply and U.S.S.G. § 5G1.3(c)—which does apply—specifically authorizes the imposition of a sentence partially concurrent with an undischarged term of imprisonment "to achieve a reasonable punishment for the instant offense," Joost's argument that the lower court deviated from the guidelines is unavailing.[8]

We need go no further. Although Joost has carefully combed the record in search of reversible error, there is none to be found. Accordingly, his conviction and sentence must be

*Affirmed.*

---

7. Joost himself asserted that the two offenses were distinguishable when he successfully moved for severance of the Hobbs Act and felon-in-possession charges for the purpose of trial. We see no unfairness in refusing to allow him to have it both ways. *See United States v. Tierney,* 760 F.2d 382, 388 (1st Cir.1985) ("Having one's cake and eating it, too, is not in fashion in this circuit.").

8. Joost's further contention that his sentence violates the Ex Post Facto Clause need not detain us. This contention rests on his theory that the district court should have applied the 1994 rather than the 1995 version of the guidelines because the commentary following section 5G1.3(b) in the former edition is more defendant-friendly than the (somewhat different) commentary appearing in the latter. But Judge Torres supportably concluded that *neither* version of section 5G1.3(b) was in play.