# United States Court of Appeals
## For the First Circuit

---

No. 00-1331

UNITED STATES OF AMERICA,

Appellee,

v.

MARLA BARNES,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

---

Stephen B. Hrones, with whom Hrones & Garrity was on brief, for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Heidi E. Brieger, Assistant United States Attorney, were on brief, for appellee.

---

May 30, 2001

---

**SELYA, Circuit Judge.** On October 14, 1999, a jury convicted defendant-appellant Marla Barnes of conspiracy to import cocaine and unlawful use of a communications facility in connection with that conspiracy. See 21 U.S.C. §§ 963, 843(b). The district court imposed a 168-month incarcerative sentence, to be followed by a five-year term of supervised release. The appellant now challenges her conviction on various grounds. Finding her arguments unpersuasive, we affirm the conviction. The appellant also advances three assignments of error that touch upon her sentence. We reject two of these, but accept the third.

## I. BACKGROUND

This appeal arises out of a joint trial at which both the appellant and her brother, Reynaldo, were convicted. Although we consolidated their ensuing appeals for briefing and oral argument, we opted to dispose of the appeals separately. This is the second of the two opinions.

Because the facts on which the convictions rest are not central to the issues raised on this appeal, we begin by rehearsing what we previously wrote in connection with Reynaldo's appeal:

> [T]he jury supportably could have found that [Reynaldo Barnes], in an effort to expand his ongoing trade in illegal narcotics, told

one of his quondam customers that his sister, Marla Barnes, could provide the sizable quantities of cocaine that the customer professed to require. The customer, in reality an undercover agent employed by the federal Drug Enforcement Administration (DEA), accepted the invitation. He thereafter met with the Barnes siblings, and Marla Barnes made preliminary arrangements (or so she said) for a large purchase of cocaine through her connections in Panama.

As an initial step in the process, Marla Barnes sold a one kilogram sample of cocaine to the undercover agent. . . . For a variety of reasons, the larger deal never materialized.

United States v. Reynaldo Barnes, 244 F.3d 172, 175 (1st Cir. 2001).

The grand jury initially indicted both Barnes siblings in what we sometimes shall call "Indictment No. 1." The charges were severed, however, after Reynaldo indicated an intention to plead guilty. Following Marla Barnes's separate trial on Indictment No. 1, she was convicted of conspiracy to import cocaine. On appeal, this court vacated the judgment and ordered the indictment dismissed without prejudice as to Marla Barnes on the ground that the prosecution had dallied impermissibly in bringing her to trial. United States v. Barnes, 159 F.3d 4, 15-18 (1st Cir. 1998) (Barnes I).

The grand jury promptly reindicted the appellant, charging her, in what we sometimes shall call "Indictment No.

2," not only with conspiracy to import cocaine but also with two instances of unlawful use of a communications facility in the course of drug-trafficking activities. At that time, Indictment No. 1 was still pending against Reynaldo Barnes, who had moved to withdraw his guilty plea. On March 19, 1999, the district court (Tauro, J.) allowed the motion to withdraw. The government then moved to dismiss Indictment No. 1 without prejudice and Reynaldo moved to dismiss that indictment with prejudice.

These motions were pending on May 19, 1999, when the grand jury — one day before the appellant's speedy trial deadline — superseded Indictment No. 2. The superseding indictment added Reynaldo Barnes as a defendant in this case, charging him with having committed the same offenses that it previously had charged Marla Barnes with committing.[1] Several things then occurred. We mention two. On June 23, 1999, Judge Tauro denied Reynaldo Barnes's motion to dismiss Indictment No. 1 with prejudice and granted the government's cross-motion for dismissal without prejudice. The superseded version of

---

[1]The first and second indictments did not replicate one another. Although both charged the defendants with conspiracy, Indictment No. 1 included a criminal forfeiture count, see 21 U.S.C. § 853, which Indictment No. 2 omitted, and Indictment No. 2 (as initially brought and as superseded) included two "communications facility" counts, see id. § 843(b), which Indictment No. 1 omitted.

Indictment No. 2 remained zoetic, with both Barnes siblings as defendants. On October 4, 1999, Judge Gorton denied the appellant's motion to dismiss that indictment under the Speedy Trial Act, 18 U.S.C. § 3161 (the STA). The case eventually went to trial and the jury convicted both defendants — Reynaldo on all three counts and Marla on the conspiracy count and one of the two "communications facility" counts (acquitting her on the remaining count). This appeal followed.

Before us, the appellant advances three principal arguments. First, she classifies the government as a repeat offender, contending that it again violated her rights under the STA. Second, she claims to have detected reversible error in the district court's jury instructions. Third, she lodges a multifaceted claim of sentencing error. We address these asseverations sequentially.

## II. ALLEGED SPEEDY TRIAL ACT VIOLATIONS

In invoking the prophylaxis of the STA, the appellant makes three interrelated arguments. The lower court rejected all of them, and so do we.

### A. Commencement of the STA Time Line.

Typically, the speedy trial clock begins to run on the later of (a) the filing date of the indictment or information, or (b) the defendant's first appearance before a judicial

officer. 18 U.S.C. § 3161(c)(1). In the event of a retrial, however, the STA adds a special twist. It stipulates that, in such an event, "the trial shall commence within seventy days from the date the action occasioning the trial becomes final." Id. § 3161(d)(2).

The appellant contends that this latter provision governs her case, and that, therefore, the relevant date for restarting the speedy trial clock was January 12, 1999 (the date when our mandate issued in Barnes I). Because the second trial did not commence within seventy non-excluded days of that date, the appellant moved to dismiss the new indictment. The district court refused to attach decretory significance to the January 12 date and, accordingly, denied the motion. Affording de novo review, see United States v. Staula, 80 F.3d 596, 600 (1st Cir. 1996), we uphold the district court's ruling.

In arguing that this court's mandate qualifies as "the action occasioning the trial" and thus governs the speedy trial computation, the appellant relies almost exclusively on our decision in United States v. Joost, 133 F.3d 125 (1st Cir. 1998). To be sure, we held there that the date of mandate constituted the starting point for a renewed speedy trial calculation. Id. at 130. But the circumstances were materially different. In Joost, we had overturned the defendant's

-7-

conviction based on parlous jury instructions, leaving the indictment intact and setting the stage for a retrial <u>on the same indictment</u>. <u>Id.</u> at 127.

The case at hand is cut from markedly different cloth. Our decision in <u>Barnes I</u> resulted in dismissal of the then-pending indictment, thereby precluding a further trial unless the government obtained a new indictment. <u>See</u> <u>United States</u> v. <u>Taylor</u>, 487 U.S. 326, 342 (1988) (explaining that dismissal without prejudice under the STA forces the government to obtain a new indictment if it chooses to reprosecute); <u>United States</u> v. <u>Brown</u>, 770 F.2d 241, 243 (1st Cir. 1985) (similar). Thus, in contrast to <u>Joost</u>, this case does not involve a retrial on the same indictment, but, rather, a first trial on a new indictment. For this reason, the issuance of mandate in connection with the original appeal cannot be viewed as "the action occasioning the trial," and section 3161(c)(1), not section 3161(d)(2), controls.

That ends this aspect of the matter. The grand jury handed up Indictment No. 2 on November 19, 1998. The appellant's initial appearance before the court with respect to that indictment took place on February 11, 1999. The latter date, rather than the date of mandate in <u>Barnes I</u>, marks the occasion for restarting the speedy trial clock.

### B. **Excludable Time.**

Once the clock begins to tick, the STA contemplates several situations in which delays may occur without compromising the seventy-day limit. See 18 U.S.C. § 3161(h)(1)-(9). The appellant challenges the district court's exclusion of certain time, claiming that the court erred in granting a continuance and a concomitant period of excludable delay, based on the "ends of justice." Id. § 3161(h)(8)(A). We review the district court's "ends of justice" determination for abuse of discretion. United States v. Mitchell, 723 F.2d 1040, 1044 (1st Cir. 1983). We discern none in this instance.

The rudiments are clear. When a judge bases a continuance on an explicit finding that the ends of justice outweigh the collective interest in a speedy trial, the resulting period of delay may be excluded under section 3161(h)(8) of the STA. United States v. Santiago-Becerril, 130 F.3d 11, 16 (1st Cir. 1997). Gaining such an exclusion involves a balancing of the interests of the prosecution, the defendant, and the public. Mitchell, 723 F.2d at 1043. To ensure the appropriateness of this balance, the trial court ordinarily must elucidate its reasons for approving such a continuance, United States v. Doran, 882 F.2d 1511, 1515 (10th Cir. 1989); United States v. Pringle, 751 F.2d 419, 432 (1st Cir. 1984), save for

cases in which those reasons are readily apparent from the circumstances.

A trial court's discretion to authorize an "ends of justice" continuance is relatively circumscribed, and continuances should not be granted cavalierly. Mitchell, 723 F.2d at 1044. The STA sets out a non-exhaustive list of considerations that the court should bear in mind in deciding whether to grant or deny a continuance on this basis. See 18 U.S.C. § 3161(h)(8)(B) (mentioning, inter alia, the demands of justice, the complexity of the case, and the timing of relevant antecedent events). At the close of the day, however, reasonableness serves as the touchstone of an "ends of justice" analysis.

Against this backdrop, we turn to the relevant facts. On February 11, 1999, a magistrate judge excluded the period from that date to March 11 pursuant to 18 U.S.C. § 3161(h)(8). The magistrate judge made an explicit "ends of justice" determination designed, he said, to provide the defense with a reasonable period of time within which to determine whether to proceed under automatic discovery rules (and if so, a further period to accommodate compliance). The magistrate judge also advised the parties that they had ten days within which to file objections to the order. No one objected.

The order (and, hence, the challenged exclusion of time) is fully consistent with the policies underlying the STA. See Mitchell, 723 F.2d at 1044 (explaining that Congress "recognized that the time limit requirements of the [STA] must be flexible enough to accommodate the practicalities of our adversary system"). Moreover, it seems perfectly reasonable as a case-management device. Cf. Santiago-Becerril, 130 F.3d at 17 (excluding the time reasonably required to schedule a new trial date under the "ends of justice" rubric); United States v. Edwards, 627 F.2d 460, 461 (D.C. Cir. 1980) (per curiam) (upholding "ends of justice" continuance based in part on scheduling conflicts). After all, the magistrate judge's explicit references to section 6(b)(8) of the district court's Speedy Trial Plan and Local Rule 112.2(A)(2) make manifest that he intended to create a window of opportunity to permit automatic discovery to take place and motions to be filed. Since the appellant neither objected to the magistrate judge's order at the time nor explained in her brief how the judge's seemingly innocuous effort to facilitate discovery plausibly can be labeled an abuse of discretion, we approve the exclusion.

In a belated effort to turn the tables, the appellant points out that she filed a notice on February 16, 1999, in which she waived automatic discovery pursuant to Local Rule

116.1(B).  She asserts that once she made this election, the court should have amended its earlier order and truncated the period of excludable delay accordingly.  But the appellant did not make a timely request to that effect in the district court.  Trial judges are not expected to be mind readers, nor are they obliged to review case records sua sponte in order to determine whether changed circumstances warrant the revision of orders entered at an earlier date.  The appellant, had she wished to explore the feasibility of shortening the previously announced period of excludable delay, should have so moved.  Her failure to do so constituted a waiver of the claim that she now attempts to advance.   See, e.g., Santiago-Becerril, 130 F.3d at 18 (noting significance of lack of timely objection in evaluating reasonableness of exclusions of time under the STA); United States v. Baskin-Bey, 45 F.3d 200, 203-04 (7th Cir. 1995) (ruling that defendant's failure to object contemporaneously to a period of excludable delay amounted to a waiver).

We hold, therefore, that the district court did not abuse its discretion in excluding the one-month period from February 11 to March 11 to satisfy the ends of justice.

## C.  **Effect of the Superseding Indictment.**

-12-

The appellant's final invocation of the STA implicates the advent of the superseding indictment. The grand jury returned that indictment on May 19, 1999 — the day before the appellant's speedy trial deadline. As we have said, the bill added a new (albeit previously known) defendant but left the array of charges intact. The district court restarted the speedy trial clock at that point and overrode the appellant's ensuing protest.

The issue raised by the appellant involves 18 U.S.C. § 3161(h)(7), which permits a reasonable period of excludable delay "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." The Supreme Court has interpreted this proviso to mean that when a joint trial is in prospect, the speedy trial clock seeks the longest available span of time. Henderson v. United States, 476 U.S. 321, 323 n.2 (1986) (providing, in general, that all defendants who are joined for trial fall within the most generous speedy trial period available to any one of them). In other words, the time line for the last defendant joined usually becomes the time line for all defendants. Id. The court below adhered to this rule.

The appellant resists a rote application of the Henderson rule. She notes that the Court has held that a

superseding indictment does not restart the speedy trial clock if it makes only minor changes to the charging document. See United States v. Rojas-Contreras, 474 U.S. 231, 237 (1985) (holding that correction of a date by way of a superseding indictment does not justify restarting the speedy trial clock). Building on this foundation, she then observes that this court, in discussing the latter tenet, stated that a superseding indictment which added two new defendants "did not restart [the original defendant's] STA's [sic] clock because [the superseding indictment] was based on the original charges." Santiago-Becerril, 130 F.3d at 19. The appellant posits that the quoted language in Santiago-Becerril is controlling here.

We reject this postulate. Read literally, the quoted words from Santiago-Becerril would contradict the Supreme Court's decision in Henderson (and, thus, would not command our allegiance). Equally as important, that statement forms no part of the holding in Santiago-Becerril. Indeed, the court there concluded that, even without resetting the speedy trial clock upon the return of the superseding indictment, no STA violation had occurred. 130 F.3d at 23. Hence, the language which the appellant embraces is classic dictum — it can be removed from the opinion without either impairing the analytical foundations of the court's holding or altering the result reached — and we

-14-

do not consider ourselves bound by it.  See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992) ("Dictum constitutes neither the law of the case nor the stuff of binding precedent.").  Thus, we disavow it in order to avoid confusion over its proper scope.

Putting the disavowed Santiago-Becerril dictum to one side, Henderson is the beacon by which we must steer.  There, the Court specifically interpreted section 3161(h)(7) to mean that "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." 476 U.S. at 323 n.2.  This case comes within the Henderson rule.  Resetting the clock upon the return of the superseding indictment synchronized the original defendant (Marla) with the newly-joined defendant (Reynaldo) for purposes of the STA.  This sort of adjustment helps to ensure that the STA will not become a vehicle for altering existing rules of joinder and severance by compelling the government to prosecute properly joined defendants piecemeal.  See United States v. Tobin, 840 F.2d 867, 869 (11th Cir. 1988); see also United States v. Pena, 793 F.2d 486, 489 (2d Cir. 1986) (explaining how resetting the STA clock after the addition of a new defendant serves to husband judicial resources and avoid duplicative proceedings).

Nor does the Rojas-Contreras doctrine demand a different result. The superseding indictment here added a new defendant, an important development that distinguishes this case from those in which a grand jury employs a superseding indictment as a means of correcting a minor error in an extant indictment. E.g., Rojas-Contreras, 474 U.S. at 236-37 (holding STA clock not restarted upon return of a superseding indictment that merely changed an incorrect date); United States v. Reynolds, 781 F.2d 135-37 (8th Cir. 1986) (holding to like effect when superseding indictment simply recharacterized a witness's role). Given the substantial nature of the change conveyed by the superseding indictment in this case, it seems entirely appropriate to allow all parties extra time to prepare adequately for trial. See, e.g., United States v. Spring, 80 F.3d 1450, 1457 (10th Cir. 1996).

To sum up, Henderson controls. Thus, the district court did not err in clearing the appellant's speedy trial clock upon the return of the superseding indictment. See United States v. Baker, 40 F.3d 154, 159 (7th Cir. 1994) (noting that the STA clock begins to run anew on the date of the last codefendant's arraignment); Pena, 793 F.2d at 489 (noting that "cases involving multiple defendants are governed by a single speedy trial clock, which begins to run with the clock of the

-16-

most recently added defendant"). We do, however, add a cautionary note. Although we find that the government complied with the STA, we are concerned that the government stretched the clock so far: after once violating the appellant's STA rights, the government filed the superseding indictment only one day before the clock was to expire again, thereby laying claim to yet another seventy days.

We recognize that extenuating circumstances existed here and that Reynaldo's vacillation about whether to plead guilty likely contributed both to the delay and to the prosecution's last-minute decision to re-indict the siblings together. Nevertheless, in other, less exigent circumstances, the clock may not prove to be so elastic. The Henderson rule anticipates exceptions, see 476 U.S. at 323 n.2 (noting that codefendants "generally" fall within the latest defendant's computation), and we think it generally advisable, even absent a violation of the STA, for a court faced with such a belated joinder to consider specifically how much time is "reasonable" for trial preparation rather than automatically restarting the clock. See 18 U.S.C. § 3161(h)(7) (excluding a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run"); id. §

-17-

3161(c)(2) (setting thirty days as the minimum trial preparation time guaranteed a defendant).

## III.  ALLEGED INSTRUCTIONAL ERRORS

The appellant's next assignment of error implicates the district court's jury instructions on the law of conspiracy. She maintains that the court erred in its definition of "agreement" and, to make a bad situation worse, failed properly to instruct as to the object of the conspiracy.

We turn first to the court's definition of a conspiratorial agreement (reprinted in the margin).[2]  The appellant takes issue with this definition, criticizing especially the court's indication that "shar[ing] a general understanding about the crime" would be sufficient to show the requisite agreement.

---

[2]The court stated in pertinent part:
Now, a conspiracy is an agreement, spoken or unspoken.  The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all of the details.  It does not even have to be a successful plan.  But the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime.  Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests, does not necessarily establish proof of existence of a conspiracy, but you may consider such factors.

We dismiss this argument out of hand. We review jury instructions that involve an explanation of the law de novo. See United States v. Pitrone, 115 F.3d 1, 4 (1st Cir. 1997). Reading the court's instructions as a whole, see United States v. Cintolo, 818 F.2d 980, 1003 (1st Cir. 1987), they constitute a fair statement of the applicable law. No more is exigible. See United States v. Rivera-Alicia, 205 F.3d 480, 484 (1st Cir.), cert. denied, 121 S. Ct. 256 (2000); United States v. McGill, 953 F.2d 10, 13 (1st Cir. 1992).

The appellant nonetheless contends that the challenged instruction is less than she deserved because she specifically requested that the court tell the jurors that a "meeting of the minds" was a necessary prerequisite to a conspiratorial agreement.[3] The fact that the appellant made such an entreaty does not change the equation, even if the requested charge was substantially correct. There is no exact formula for converting legal principles into lay language — and the choice of what words are to be used belongs, within wide margins, to the trial judge. It is apodictic that "[t]he trial court's refusal to give a particular instruction constitutes reversible error only

---

[3]The appellant asked the district court to charge the jury that "[a] meeting of the minds between or among the members of the conspiracy is required" to show an agreement, and that "[t]here must be a meeting of the minds . . . to commit the unlawful act."

-19-

if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." McGill, 953 F.2d at 13.

In this case, the charge that the court gave covered substantially the same terrain as the proffered "meeting of the minds" language. Although there were linguistic differences, they were more matters of style than of substance. We fail to see how the court's definition of an agreement varied in a material way from the definition espoused by the appellant. Mindful that a party generally has no right to insist that the trial court parrot particular language in its jury instructions, United States v. Nivica, 887 F.2d 1110, 1124 (1st Cir. 1989), we reject the appellant's assignment of error.

The appellant has yet another string to her bow. She maintains that the district court failed to instruct the jury that the conspirators must reach agreement as to the object of the conspiracy. See, e.g., United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993); United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989). This criticism reads the court's charge too narrowly. The court told the jurors that, in order to convict, they "must find that the defendants conspired with each other to import cocaine into the United States"

(emphasis supplied). We think that this reference, taken in context, sufficed both to describe the object of the conspiracy and to delineate the jury's obligation.

**IV. ALLEGED SENTENCING ERRORS**

The district court sentenced the appellant to a 168-month incarcerative term, to be followed by a five-year period of supervised release. The appellant attacks her prison sentence on three grounds.

First, the appellant contends that the district court clearly erred in its drug-quantity finding (and, therefore, in its determination of the guideline sentencing range). We do not linger over this contention. We dispatched an identical argument in deciding the codefendant's appeal. See United States v. Reynaldo Barnes, 244 F.3d at 176-77. The outcome here necessarily is the same. Accordingly, we reject the appellant's complaint about the district court's drug-quantity determination for the reasons stated in our earlier opinion. See id.

The appellant's second argument suffers the same fate. She asserts that the length of her sentence offends the rule established in Apprendi v. New Jersey, 120 S. Ct. 2348, 2362-63 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). This argument,

-21-

too, was previously made and rejected. See United States v. Reynaldo Barnes, 244 F.3d at 177-78 (citing United States v. Robinson, 241 F.3d 115, 119 (1st Cir. 2001)). Here, as in Reynaldo's case, we discern no Apprendi error in respect to the prison sentence imposed.

Once again, we need not tarry. An incarcerative sentence of no greater than twenty years for importing, or conspiring to import, any quantity of cocaine falls below the default statutory maximum for such an offense,[4] and therefore does not violate Apprendi. Id. That is dispositive here. "No Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum, even though drug quantity, determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." Robinson, 241 F.3d at 119.

As to the five-year supervised release term, the appellant benefits from the fact that the penalty statute, 21 U.S.C. § 960(b)(3), provides explicitly for a supervised release term of three years for violations of the importation statute involving less than 500 grams of cocaine. See United States v. Reynaldo Barnes, 244 F.3d at 177-78 (explaining this point).

_____

[4]As we explained in our earlier opinion, the default statutory maximum applicable to violations of 21 U.S.C. § 963 (the statute criminalizing importation or attempted importation of any detectable quantity of cocaine) is contained in 21 U.S.C. § 960(b)(3). See United States v. Reynaldo Barnes, 244 F.3d at 177.

-22-

Given this court's previous holding that supervised release terms set out in particular sections of the drug laws establish the maximum terms for violations of those sections, see Suveges v. United States, 7 F.3d 6, 10 (1st Cir. 1993) (construing 21 U.S.C. § 841(b)), we think that here, as in the companion appeal, Apprendi requires that this aspect of the appellant's sentence be reduced to three years, see United States v. Reynaldo Barnes, 244 F.3d at 178.[5] This reduction can, of course, be accomplished without either disturbing the remainder of the sentence or reconvening the disposition hearing. See id.

## V. CONCLUSION

We need go no further. After careful consideration of the record, we conclude that the government did not violate the Speedy Trial Act and that the lower court committed no reversible error in charging the jury. We therefore affirm the appellant's conviction. We also affirm her sentence, except for one particular. To repair that defect, we instruct the district court, on remand, to reduce the supervised release term previously imposed from five years to three years.

**It is so ordered**.

---

[5]Given the idiosyncratic facts, we treated this Apprendi error as "plain" in Reynaldo's case, and we do the same here.