**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

            v.

DAVID R. KING,
      *Defendant-Appellant.*

No. 05-10629

D.C. No.
CR-03-00215-WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief District Judge, Presiding

Argued and Submitted
October 16, 2006—San Francisco, California

Filed April 18, 2007

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

James R. Greiner, Sacramento, California, argued the cause for the defendant-appellant and filed a brief.

Michelle Rodriguez, Assistant U.S. Attorney, Sacramento, California, argued the cause for the plaintiff-appellee, and filed a brief. McGregor W. Scott, United States Attorney, was also on the brief.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

In this appeal, we must decide whether a criminal defendant's right to a speedy trial under either the Speedy Trial Act or the Sixth Amendment was violated.

I

A

This case arises out of the investigation of a bank fraud and identity-theft conspiracy in Sacramento, California. From June 2002 until May 2003, David R. King conspired with numerous other individuals to obtain stolen financial information from bank insiders, including employees of the Golden One Credit Union. King used such information to create fraudulent checks drawn on actual accounts for distribution to his co-conspirators, who were to cash the fake checks and return most of the money to King.

During the course of investigating the conspiracy, officers employed the services of a confidential witness to make tape recordings of conversations with King, during which he provided her with fraudulent checks. A search warrant was executed upon King's residence in Sacramento, which he shared with a roommate, Ken Shandy. As a result of such search, additional evidence, including fraudulent checks and check-making materials, was recovered by law enforcement.

B

On May 8, 2003, a grand jury indicted King along with two co-conspirators, Dorian Thomas and Daryen Simmons, for multiple counts of conspiracy and bank fraud.[1] On December 3, 2003, the government filed a superseding indictment ("first superseding indictment") which charged King with an additional twelve counts of bank fraud and also added a new co-defendant, King's roommate Shandy. Shandy was arraigned on December 8, 2003, and King was arraigned on the first superseding indictment on December 10, 2003. At that time, the trial was continued to afford Shandy and his counsel time to prepare a defense. By March 2004, Shandy decided to plead guilty and to cooperate with the government.

Throughout 2004, there were numerous exclusions of time and continuances granted by the district court, including exclusions related to pre-trial motions filed by King. On December 15, 2004, the district court denied King's pre-trial motion to suppress evidence obtained during the search of his residence and vehicles. On December 16, 2004, the government filed a new superseding indictment ("second superseding indictment") which added no new charges but eliminated reference to Shandy. On January 19, 2005, King made a motion to dismiss the indictment on Speedy Trial Act grounds. The government filed an opposition to that motion on January 21, 2005, and on January 26, 2005, filed another superseding indictment ("third superseding indictment"). The motion to dismiss was denied by the district court on that same day.

King's first trial began on February 8, 2005. After several

---

[1]On July 8, 2003, another co-conspirator in the scheme, Jamine Alfred, pled guilty to a misdemeanor count of bank larceny. On July 30, 2003, co-defendant Simmons pled guilty to twelve charges contained in the original indictment, as well as two additional counts. In November 2003, co-defendant Thomas also decided to plead guilty.

days of trial, King made a motion through his attorney for a mistrial, claiming that he had witnessed jurors sleeping during the trial. After the district court initially denied the motion, additional information presented to the court suggested that jurors had indeed been sleeping during the trial. King renewed his motion for a mistrial, and because only eleven eligible jurors remained, the district court granted the motion. The retrial began on April 19, 2005, and on May 5, 2005, the second jury found King guilty of all but three of the bank fraud charges contained in the third superseding indictment.

King filed a timely notice of appeal.

## II

## A

King contends that his statutory right to a speedy trial was violated.[2] He argues that the superseding indictments were attempts by the government to manipulate the seventy day clock provided by the Speedy Trial Act ("STA" or "Act"), 18 U.S.C. § 3161(c)(1), and therefore did not alter the time frame in which he was required to be brought to trial under the Act. The government, in contrast, argues that when co-defendant Shandy was added by way of the first superseding indictment, King's STA clock was measured with respect to Shandy's STA clock. It further argues that because King either asked for, or agreed to, nearly all of the continuances, he cannot use the STA as a sword. Finally, the government argues that there is no evidence in the record that it manipulated the STA clock.

---

[2]King also argues (1) that the district court erred in denying his motion to suppress evidence obtained from two vehicles located at his residence, and (2) that his second trial was barred by double jeopardy because the prosecutor "goaded" him into making a motion for a mistrial. In a concurrently filed memorandum disposition, we deal with these contentions. *See United States v. King*, No. 05-10629 (filed April 18, 2007).

## B

**[1]** Under the STA, a defendant must be brought to trial within seventy days after the indictment or arraignment (whichever comes later) of the last defendant.[3] *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) (citing 18 U.S.C. § 3161(h)(7)); *United States v. Morales*, 875 F.2d 775, 777 (9th Cir. 1989). The STA mandates dismissal of the indictment upon defendant's motion if the seventy day limitations period is exceeded. 18 U.S.C. § 3162(a)(2).

### 1

In determining whether the Act has been violated, we "must first ascertain when the seventy day clock began running." *United States v. Wirsing*, 867 F.2d 1227, 1229 (9th Cir. 1989). We must therefore consider the effect the superseding indictments filed in this case had on the running of the STA clock.

**[2]** We have held that the filing of a superseding indictment will not automatically reset the STA clock where the new indictment does not charge a new crime, but only corrects a defect in the original indictment. *See United States v. Karsseboom*, 881 F.2d 604, 607 (9th Cir. 1989); *United States v. Clymer*, 25 F.3d 824 (9th Cir. 1994). In *Clymer*, we stated that "[a]lthough the grand jury returned a superseding indictment on April 28, 1989, this action did not restart the Speedy Trial Act clock. When a superseding indictment contains charges which, under double-jeopardy principles, are required to be joined with the original charges, Speedy Trial Act calculations begin from the date of the *original* indictment." 25 F.3d at 827 n.2 (emphasis in original). This rule "prevents the gov-

---

[3]We review the district court's denial of the motion to dismiss on Speedy Trial Act grounds de novo, *United States v. Hall*, 181 F.3d 1057, 1061 (9th Cir. 1999), but review findings of fact for clear error, *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

ernment from circumventing the speedy trial guarantee by restarting the speedy-trial clock by obtaining superseding indictments with minor corrections." *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990).

In *Henderson*, however, the Supreme Court was faced with a situation where both new charges and an additional defendant were added in a superseding indictment. 476 U.S. at 323. There, an indictment was returned on July 30, 1980, charging Henderson and two others with two counts of violations of 21 U.S.C. §§ 841(a)(1) and 846. The co-defendants were arraigned on this indictment on July 31, 1980. On August 27, 1980, a five-count superseding indictment was returned against petitioners and a fourth defendant, Peter Bell. Bell was the last defendant arraigned on the superseding indictment on September 3. In deciding when the STA clock began to run for Henderson, the court stated in a footnote that, "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Id.* at 323 n.2. Therefore, "[o]nce Bell was joined with petitioners in the September 3 superseding indictment, their 70-day period was measured with respect to his." *Id.* The Court did not think that it mattered for STA purposes that Bell was severed from the other co-defendants on November 1, 1982, as soon as trial commenced.

**[3]** Although we have not squarely addressed the issue previously, other circuits that have considered the effect of the filing of a superseding indictment adding a new defendant have held that the superseding indictment restarts the STA clock for all defendants. In *United States v. Barnes*, 251 F.3d 251 (1st Cir. 2001), the First Circuit held that a superseding indictment returned the day before the speedy trial deadline, containing the same charges and adding only one new, albeit previously known, defendant served to restart the speedy trial clock. *Id.* at 257. While acknowledging some ambiguity in its prior decisions, the *Barnes* court found that "*Henderson* is the beacon by which we must steer . . . Resetting the clock upon

the return of the superseding indictment synchronized the original defendant (Marla) with the newly-joined defendant (Reynaldo) for purposes of the STA." *Id.* at 258. The court reasoned that, "[t]his sort of adjustment helps to ensure that the STA will not become a vehicle for altering existing rules of joinder and severance by compelling the government to prosecute properly joined defendants piecemeal." *Id.* Although the superseding indictment was filed the day before Barnes's STA clock was to expire, the court could not conclude that the delay in adding the additional defendant was unreasonable. *Id.* at 259.

The Second Circuit also has read *Henderson* as mandating a single clock amongst all co-defendants, measured by the last-added defendant. In *United States v. Gambino*, 59 F.3d 353 (2d Cir. 1995), the court stated that "the speedy trial clock in cases involving multiple defendants begins with the running of the clock for the most recently added defendant."[4] *Id.* at 362 (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986); *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983)). The Second Circuit then noted that the "only inquiry made in such multiple defendant cases is whether the delay is 'reasonable.' " *Id.*

**[4]** We agree that *Henderson* mandated a single controlling STA clock for all co-defendants in this situation.[5] And criti-

---

[4]The court in *Gambino* ultimately decided that the exception for the addition of co-defendants was not applicable because the superseding indictment was filed after the defendant filed his motion to dismiss the original indictment. 59 F.3d at 362.

[5]King's reliance in his reply brief on *United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999) is unavailing. There we found that the "ends of justice" were not served by allowing Hall to be carried along on a motion for a continuance by a co-defendant who was then engaged in plea negotiations with the government. *Id.* at 1062. But this is not a case like *Hall* where the "underlying aim [of the delay] was to *eliminate* the need for a joint trial by achieving a plea agreement between Nelson and the government." *Id.* We deal here with the addition of a new co-defendant, and

cally, there is nothing in this record that suggests that the delay of some seven months in adding Shandy was unreasonable. *See* 18 U.S.C. § 3161(h)(7) (noting that only a "reasonable period of delay" may be excluded). This case involved a complex scheme of bank fraud, and the government's case was in flux during those seven months. A number of co-conspirators, and both original co-defendants, chose to plead guilty in the period between the original and first superseding indictment. *See supra* note 1. These events allowed the government to develop, or at least to strengthen, its case against Shandy. Further, contrary to King's assertions, it was not a foregone conclusion that Shandy would plead guilty instead of proceeding to trial. There is no suggestion in the record that the government adding Shandy by way of superseding indictment was a purposeful manipulation of the STA clock.

Finally, against the reasonableness of the delay in adding Shandy and the absence of bad faith on the part of the government, we must weigh the reality that failing to synchronize King's STA clock with Shandy's would have required the district court to sever King's trial. It is clear that the STA was not intended to alter existing rules of joinder. As the Eleventh Circuit has explained, "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time." *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982).

**[5]** We recognize that the *Henderson* rule will admit of some exceptions. *See Henderson*, 476 U.S. 323 n.2 (noting

whether synchronizing the STA clocks of all co-defendants, where reasonable, will help to *ensure* a joint trial. *See United States v. Dota*, 33 F.3d 1179, 1183 (9th Cir. 1994) (noting the established rule that the speedy trial clock begins to tick on the date the last co-defendant appears and allowing for exclusions of time for one co-defendant to apply to the clocks of all defendants so as to ensure a joint trial).

that "[a]ll defendants who are joined for trial *generally* fall within the speedy trial computation of the latest codefendant") (emphasis added). However, we are satisfied here that the delay in adding Shandy by way of a superseding indictment was reasonable, was performed in good faith, and therefore served to synchronize the STA clocks of the two remaining co-defendants. Accordingly, King's STA clock was measured from the date Shandy was arraigned, December 8, 2003.

2

**[6]** From December 8, 2003, until King's motion to dismiss was filed on January 19, 2005, 416 days elapsed. Although the Act mandates that a defendant be brought to trial within seventy days, the Act also sets forth several types of excludable delay. 18 U.S.C. § 3161(h). As relevant here, a district court is required to exclude from speedy trial calculations: (1) any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(F); and (2) "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(8)(A).

a

On December 10, 2003, both Shandy and King appeared before the district court along with their respective attorneys. On that date, based upon the complexity of the case, the addition of a new defendant, the recent involvement of a new attorney, and the request of the defendants, District Judge Shubb granted excludable time under the STA and Local Code T-4 and T-2 from December 10, 2003, until January 28,

2004. On January 28, 2004, attorneys for both Shandy and King filed declarations for exclusions of time, which the court granted until March 31, 2004. On March 31, Judge Shubb again granted excludable time, this time to June 22, 2004. *Id.* On June 16, at a status conference, excludable time was extended until July 28, 2004. *Id.* At the July 28, 2004, status conference, at the request of King again, the district court granted excludable time until September 8, 2004. Such exclusion was extended to October 6, 2004 when a status conference was held, during which King's defense counsel was to submit a proposed order and affidavit regarding excludable time.

**[7]** All of these findings of excludable time were reasonable. The case was in flux during this time period. Shandy eventually decided to plead guilty to the charges against him in March 2004. In accordance with his plea, he agreed to testify against King, which certainly added an additional hurdle to the presentation of King's defense. Finally, King obtained new counsel during this time period. There were over 2,500 pages of discovery in this case, and many hours of recorded conversations. It was certainly reasonable for the court to find an exclusion of time to permit King's new counsel to get up to speed on the facts of the case.

b

**[8]** On October 6, 2004, King filed notice of motion to suppress evidence, along with several other motions not relevant on appeal. The district court ruled upon these motions on December 15, 2004. "When delay results from the filing of a pretrial motion, § 3161(h)(1)(F) provides an exclusion for 'all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is reasonably necessary.' " *Clymer*, 25 F.3d at 829 (quoting *Henderson*, 476 U.S. at 330). Thus, the period of time from October 6 to December 15 is excludable under 18 U.S.C. § 3161(h)(1)(F).

c

**[9]** From December 16 until January 18, no exclusions of time were granted; accordingly, thirty-four days ran off the STA clock. Thus, one day ran off the STA clock from the date Shandy was arraigned, December 8, 2003, until the first exclusion of time was granted on December 10, 2003. No time ran off the clock from December 10, 2003, until December 16, 2004, because the exclusions of time requested by the parties and granted by the district court were reasonable. Thus, only thirty-five non-excludable days ran off King's STA clock and the seventy day limit of the STA was not violated.

III

A

King also invokes his Constitutional right to a speedy trial, as secured by the Sixth Amendment.[6] The Speedy Trial Act "was enacted in part out of dissatisfaction with sixth amendment speedy trial jurisprudence, and to put more life into defendants' speedy trial rights." *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). Thus, we have recognized that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." *Id.*; *see also United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995) ("Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution.").

**[10]** The factors to be considered in the Sixth Amendment

---

[6]We review the district court's denial of the motion to dismiss on Sixth Amendment grounds de novo, but review findings of fact for clear error. *Beamon*, 992 F.2d at 1012.

analysis are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 531-33 (1972). The reason for the delay, however, is the "focal inquiry." *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739-40 (9th Cir. 1989).

B

**[11]** The district court applied such factors and found that King's Sixth Amendment right to a speedy trial had not been violated. As to the first factor, we must consider whether the time from indictment to trial crossed the line "dividing ordinary from 'presumptively prejudicial,' " which is normally considered to be approximately a year. *Doggett v. United States*, 505 U.S. 645, 652 (1992). Here, King was originally indicted in May 2003 for criminal acts arising out of a conspiracy beginning in June 2002. His trial was not held until February 2005. Thus, nearly two years elapsed from the original indictment to his trial. Nonetheless, the length of the delay was "not excessive" and this factor does not seriously weigh in King's favor. *See United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) ("Given that the [22-month] delay was not excessively long, however, it does not weigh heavily in Gregory's favor."); *United States v. Lam*, 251 F.3d 852, 857 (9th Cir. 2001) (although an approximately 15-month delay was long enough to trigger *Barker* inquiry, it only "militate[d] slightly in Lam's favor"); *Beamon*, 992 F.2d at 1014 (17-month and 20-month delays between indictment and arrest were not "great").

**[12]** As in *Lam*, we believe that the second factor, the reason for the delay, which is the focal point of the inquiry, weighs heavily against finding a Sixth Amendment violation. 251 F.3d at 857. The district judge granted continuances at the request of King and his attorney. *See United States v. Shetty*, 130 F.3d 1324, 1331 (9th Cir. 1997) (reversal of conviction on speedy trial grounds not warranted where defendant stipu-

lated to continuances). The district judge even sat down with King and explained the right to a speedy trial to him, after which King agreed to continuances. Further, the case was extraordinarily complex, involving what was essentially a hub-and-spoke banking and identity-theft conspiracy with numerous defendants and alleged co-conspirators. Finally, we note that King substituted a new attorney halfway through the proceedings, which necessarily required the judge to allow extra time for new counsel to prepare.

**[13]** The third factor of *Barker* also does not strongly counsel in favor of finding a Sixth Amendment violation. Although King at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time. *See United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (although defendant repeatedly asserted his speedy trial right, "[t]hese assertions . . . must be viewed in the light of [his] other conduct").

**[14]** Finally, King is not able to point to any specific prejudice that arose from the delay. Indeed, unlike in *Clymer*, King was not incarcerated during the pendency of the pre-trial delay. *See Clymer*, 25 F.3d at 832. While King is correct that he need not make an "affirmative demonstration of prejudice," *Moore v. Arizona*, 414 U.S. 25, 26 (1973), it is also clear that he cannot rely solely on the mere "passage of time." *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

**[15]** We conclude that the district court did not err in refusing to dismiss the indictment on Sixth Amendment speedy trial grounds.

## IV

The district court did not err in denying the motion to dismiss the indictment on Speedy Trial Act or Sixth Amendment grounds. Accordingly, King's conviction is

**AFFIRMED.**