**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2220-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

D.F.W.,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**July 22, 2021**

**APPELLATE DIVISION**

Argued May 12, 2021 – Decided July 22, 2021

Before Judges Ostrer, Accurso and Enright.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 20-01-0101.

Eric J. Liszewski, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, Deputy Public Defender, and Eric J. Liszewski, of counsel and on the briefs).

Maura M. Sullivan, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Maura M. Sullivan, of counsel and on the briefs).

The opinion of the court was delivered by

OSTRER, P.J.A.D.

How long a defendant may be detained under the Criminal Justice Reform Act (the Act), N.J.S.A. 2A:162-15 to -26, is not a simple matter of turning pages on a calendar. The Act authorizes a court to detain defendants pending trial if they pose risks, which no combination of non-monetary and monetary conditions could reasonably control, that they would endanger the community, obstruct justice, or not appear. N.J.S.A. 2A:162-18(a)(1); R. 3:4A. But the Act limits the length of such detentions to ensure speedy trials, and to mitigate presumed innocent defendants' loss of liberty. N.J.S.A. 2A:162-22(a)(2)(a); R. 3:25-4. In this appeal, by leave granted, we address two of those time limitations.

The first is the "180-day clock." Once 180 days have passed after indictment without trial — excluding various delays caused by the defendant, the prosecutor, or the court — a defendant must be released (subject to conditions), unless the prosecutor makes an additional showing. N.J.S.A. 2A:162-22(a)(2)(a) (requiring release); R. 3:25-4(c) (same); N.J.S.A. 2A:162-22(b)(1)(a)-(m) (listing excluded delays); R. 3:25-4(i) (1)-(13) (same). But the 180-day period "shall" be extended if there is a superseding indictment. N.J.S.A. 2A:162-22(a)(2)(b)(ii); R. 3:25-4(f). Relying on that authority, the

trial court here added another 180 days to defendant's detention. We must decide if that was warranted.

The second time limitation we review is the "two-year clock." After two years' detention without trial, excluding only delays the defendant caused, the defendant must be released (subject to conditions) "if . . . the prosecutor is not ready to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial." N.J.S.A. 2A:162-22(a)(2)(a); see also R. 3:25-4(d) (two-year clock); N.J.S.A. 2A:162-17 (release conditions); R. 3:25-4(d) (same). At a pretrial conference in February 2020, the prosecutor announced she was ready to proceed, the trial judge scheduled trial to start two months later, and he delivered Hudson warnings to defendant about the consequences of not appearing.[1] But, the next month, the COVID-19 pandemic halted criminal trials, including defendant's. The trial court later held that the prosecutor's readiness barred defendant's release under the two-year clock and continued to do so as the pandemic raged. Defendant challenges that decision, contending it guts what was meant to be a fail-safe limitation on pre-trial detention.

---

[1] State v. Hudson, 119 N.J. 165 (1990). We rely on a subsequent transcript for this statement. The parties did not supply the transcript of the pretrial conference or the pretrial memorandum. See R. 3:9-1(f).

We conclude the trial court wrongly extended the 180-day period because it did not consider how the superseding indictment affected the State's trial preparation, or if the State could have obtained the superseding indictment sooner. Particularly because the prosecutor said she was ready for trial soon after obtaining the superseding indictment, the court lacked good cause to tack on another 180 days to defendant's detention.

As for the two-year clock, the statute's plain language conditions release on the prosecutor's non-readiness. If the prosecutor is genuinely ready to proceed, but the court cannot accommodate the prosecutor because of a global pandemic, defendant is not entitled to release under the two-year clock.

I.

We cannot avoid burdening the reader with multiple dates because dates are what this case is about. Defendant D.F.W.[2] was arrested on November 29, 2017, and committed to the county jail on various charges arising out of his alleged sexual assault of a child in his care. After a hearing, the court on December 5, 2017 ordered him detained pending trial. Then, on February 14,

---

[2] We use initials to protect the privacy of defendant's alleged victim. See R. 1:38-3(c)(9), -(12).

2018, the grand jury returned a fifteen-count indictment charging crimes related to the alleged sexual assaults between June 2015 and November 2017.[3]

Over the next twenty-three months, multiple continuances and motions delayed trial, and different judges entered numerous "excludable time orders."[4] The orders attributed significant delays to defendant, because of motions he filed, see N.J.S.A. 2A:162-22(b)(1)(c); R. 3:25-4(i)(3); and continuances he requested, see N.J.S.A. 2A:162-22(b)(1)(d); R. 3:25-4(i)(4). Then, on January 22, 2020, the State obtained a superseding indictment, adding eight new counts alleging additional acts of sexual assault (anal penetration) during the same period the initial indictment covered, and a count of witness tampering that allegedly occurred in January 2018. On appeal, the State concedes the new sexual assault charges could have been added at the time of the original indictment, and it obtained evidence to support the witness tampering charge in October 2018, fifteen months before the prosecutor returned to the grand jury.

On February 10, 2020, the prosecutor declared she was "trial ready" and the court set a trial date of April 6, 2020. But before trial could occur, the

---

[3] A copy of this indictment is not included in the record. We rely on the State's brief for the date the indictment was returned.

[4] The orders are not included in the record; but we have a list of them.

Supreme Court on March 12, 2020 suspended criminal trials because of the COVID-19 pandemic; the suspension continued, by subsequent orders, until June 15, 2021; and the Court declared the resulting delay was excludable time attributable to the court "due to exceptional circumstances, pursuant to N.J.S.A. 2A:162-22(b)(1)(f), and on account of good cause for the delay, pursuant to N.J.S.A. 2A:162-22(b)(1)(l)." See Order of the Supreme Court, ¶ 3 (March 19, 2020).[5]

In late 2020, with trials still suspended, defendant moved for his conditional release, arguing that both the 180-day clock and two-year clock had run. After "auditing" the excludable time orders, his counsel argued many were entered in error. In oral argument in January 2021, defendant contended the 180-day clock expired November 23, 2020. The State countered that the 180-day clock would run until May 21, 2021, after adding another 180 days

---

[5] In all, the Court issued eleven "Omnibus Orders" governing court operations during the COVID-19 pandemic. The last omnibus order, issued March 23, 2021, extended post-indictment excludable time through May 17, 2021, see Eleventh COVID-19 Omnibus Order, ¶ 2(c) (March 23, 2021); then, on April 9, 2021, the Court extended excludable time "through June 15, 2021," Order of the Supreme Court, ¶ 1 (April 9, 2021). The Court then issued an order providing for commencing criminal jury trials "on or after June 15, 2021" and stating that "[t]he extensions of . . . post-indictment excludable time will conclude as set forth in the Court's April 9, 2021 Order." Order of the Supreme Court, ¶ 2(b) (May 11, 2021).

after the November 23, 2020 date because of the superseding indictment.[6] The court adopted the State's position.

Regarding the two-year clock, defendant did not say precisely when the clock had run, arguing only it must have been "some time around" the November 23, 2020 date when he contended the 180-day clock had wound down.[7] The State responded that the two-year clock stopped when the prosecutor announced on February 10, 2020 she was ready for trial. Defense counsel did not dispute the prosecutor's readiness, stating, "I can't disagree with [the prosecutor's] representation that she was ready for trial prior to the courts shutting down in March."

The trial judge entered an order on January 25, 2021 denying without prejudice defendant's motion for release under the 180-day clock or two-year clock. The court also amended some previous orders regarding excludable

---

[6] The grounds for the November 23, 2020 date — which defendant and, but for the superseding indictment, the State accepted — are unclear. Once the Supreme Court stopped all 180-day clocks on March 12, 2020, no one who had not yet reached the 180-day mark could do so during the suspension.

[7] Defendant reasoned that if the 180 days expired in November, "I have to imagine that the two year [clock] would probably be calculated some time around that, if not earlier, just given how the statute attributes excludable time."

time.[8]   The order did not reflect the total number of days defendant had accumulated on the 180-day clock.   However, based on the parties' later submissions to us, we calculate defendant had accumulated 105 non-excluded days toward the requisite 180 days.[9]

Defendant moved for reconsideration, which the trial court denied on March 17, 2021.[10]   In its written opinion, the court recounted that defendant sought "his immediate release, asserting that he has passed his 180 day statutory release date, or, alternatively, seeks his release on April 2, 2021, when he asserts that his two-year statutory release date occurs."[11]   In rejecting defendant's arguments, the judge stated "[t]he 180-day clock has been permissibly extended based on the New Jersey Court rules"; and defendant was not entitled to release under the two-year clock because the prosecutor was

---

[8]   The court entered an additional order on January 26, 2021 to address a detail involving one of the excludable time periods.

[9]  Defendant's submission reflects that the court allocated 103 days, but defendant omits two days the court allocated between October 30 and November 30, 2018.

[10]   Evidently, there was no oral argument, as no transcript has been provided.

[11]  The record does not reflect defendant's basis for contending that April 2, 2021 (as opposed to "some time" around November 23, 2020, as previously argued) was then the correct date.

ready to proceed to trial before the pandemic intervened. For support, the court cited Rule 3:25-4(f) and Rule 3:25-4(d)(1), which we discuss below.

The court stated that the 180-day clock was then set to expire on August 6, 2021, and it had "approved the State's request to effectively extend [the two-year clock] deadline to run with the 180-day clock." The court did not explain why the 180-day clock's expiration moved from May 21, 2021, which the court had previously approved orally, nor did the court explain why the two clocks would expire at the same time.[12]

Defendant sought leave to appeal and our review of the court's second order denying his release. Defendant argued he had "surpassed his 180 day statutory release date, and the superseding indictment did not restart the clock," and "the State could not have been ready for trial as no venue was available in which to try the case."[13]

We granted the motion, scheduled oral argument, invited simultaneously-filed supplemental briefs, and required the parties to submit charts showing how they calculated the two time periods, and where their positions diverged from the trial court's.

---

[12] When the court ruled in mid-March, the Supreme Court had ordered that excludable time due to the pandemic would continue until March 31, 2021. See Tenth COVID-19 Omnibus Order, ¶ 2(b) (February 17, 2021).

[13] We omit capitalization for easier reading.

In his supplemental brief, defendant amplifies his earlier arguments, stating "[a] superseding indictment does not automatically entitle the State to another 180 days to bring the case to trial," and "[a] prosecutor's bare assertion of trial readiness cannot function to indefinitely detain a defendant pretrial." In his motion brief, defendant argues his 180-day statutory release date was September 23, 2020 (two months earlier than he had argued to the trial court). But, in his submitted chart, he contends the court erroneously excluded so much time that he would have reached the 180-day release date in April 2019.

By contrast, the State contends defendant's release date under the 180-day clock is not until February 26, 2022. The State includes 1113 days of excludable time (including the COVID-19 excludable time from March 12, 2020 through June 15, 2021), plus 180 days to commence trial based on the initial indictment, and another 180 days for the superseding indictment. The State argues the two-year clock did not trigger defendant's release because the State was ready to proceed to trial in February 2020. The State attributes 480 days of excludable time to defendant since the court's detention order; as a result, the two-year clock otherwise ran on April 6, 2021.[14]

---

[14] The State asserted the court's pre-trial detention order was issued December 12, 2017, although court records indicate the court ordered detention on December 5, 2017.

While this appeal was pending, we learned defendant's trial commenced on July 6, 2021, with jury selection.[15]

## II.

We presume the reader's familiarity with the background of the Act, which allows for pretrial detention, replaces reliance on monetary bail, and establishes speedy trial deadlines. See State v. Robinson, 229 N.J. 44, 52-56 (2017) (discussing the genesis of the Act and its three principal components). We focus on two speedy trial deadlines, turning first to the court's extension of the 180-day clock because of the superseding indictment; and then to the court's decision to deny release under the two-year clock based on the prosecutor's expression of readiness.[16]

## A.

The Act creates a 180-day deadline for commencing trial after indictment; if not met, a defendant shall be released subject to conditions

---

[15] We do not consider defendant's appeal moot, as he contends he should have been released before trial commenced. See Redd v. Bowman, 223 N.J. 87, 104 (2015) (defining an issue as moot if the decision sought would have no practical effect). In any event, the appeal raises issues of public importance that should be addressed. See Finkel v. Twp. Comm. of Twp. of Hopewell, 434 N.J. Super. 303, 315 (App. Div. 2013).

[16] We do not address a third deadline: that a defendant cannot be detained for more than ninety days before the return of an indictment. N.J.S.A. 2A:162-22(a)(1)(a); R. 3:25-4(b).

(barring an additional showing by the prosecutor), but the clock is stopped during periods of "excludable time," and superseding indictments shall also extend the deadline. N.J.S.A. 2A:162-22(a)(2); R. 3:25-4.[17] The 180-day clock has its roots in the original recommendations of the Report of the Joint Committee on Criminal Justice 5, 9, 85-88 (March 10, 2014) [hereinafter JCCJ Report], https://www.njcourts.gov/courts/assets/criminal/finalreport3202014.pdf.

The Act states: "An eligible defendant who has been indicted shall not remain detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, not counting excludable time for reasonable delays as set forth in [N.J.S.A. 2A:162-22(b)], before commencement of the trial." N.J.S.A. 2A:162-22(a)(2)(a); see also R. 3:25-4(c)(1). The Act identifies thirteen reasons to stop the clock, including court-granted continuances that the defendant, or the defendant and the prosecutor jointly request, N.J.S.A. 2A:162-22(b)(1)(d); R. 3:25-4(i)(4); and time consumed by motion practice, N.J.S.A. 2A:162-22(b)(1)(c), although the Court Rule restricts the time excludable for that reason, R. 3:25-4(i)(3). See State v. Forchion, 451 N.J. Super. 474, 479-80 (App. Div. 2017) (discussing

_____

[17] The Court Rule implements the Act, so "[i]n determining what time is excludable, courts must consider both the speedy trial statute and the speedy trial rule." State v. Washington, 453 N.J. Super 164, 195 (App. Div. 2018).

12

the motion-practice excludable time).  Also excluded is time resulting from "exceptional circumstances including . . . a natural disaster."  N.J.S.A. 2A:162-22(b)(1)(f); R. 3:25-4(i)(6).  The Act includes a catch-all for any other periods "not specifically enumerated if the court find goods cause for the delay," N.J.S.A. 2A:162-22(b)(1)(l), and the Court Rule further requires the catch-all be "narrowly construed," R. 3:25-4(i)(12).

But, even if 180 days elapse, after accounting for the clock-stopping excludable time periods, the defendant does not get to just walk out of jail.  The court may release the defendant on conditions, much like those accompanying release if the defendant had not been detained in the first place.  See N.J.S.A. 2A:162-22(a)(2)(a) (stating the defendant shall be released pursuant to N.J.S.A. 2A:162-17, which authorized conditions); R. 3:25-4(c)(4)(C).

Even with conditions, the defendant is not guaranteed release.  Rather, he shall be released "unless" the court makes two findings on a prosecutor's motion, in which the prosecutor explains the reasons for the trial's delay.  N.J.S.A. 2A:162-22(a)(2)(a); R. 3:25-4(c)(2), -4(c)(4)(B).  If the court finds first, "a substantial and unjustifiable risk to the safety of any other person or the community or the obstruction of the criminal justice process would result from the eligible defendant's release from custody, so that no appropriate

conditions for the eligible defendant's release could reasonably address that risk," and second, "the failure to commence trial . . . was not due to unreasonable delay by the prosecutor," N.J.S.A. 2A:162-22(a)(2)(a); see also R. 3:25-4(c)(4)(B), then the court may add up to sixty days for trial to commence while defendant remains detained, or an "additional reasonable period of time" "[i]f exceptional circumstances are shown." R. 3:25-4(c)(4)(B).

On top of that basic structure of the 180-day clock, the Act adds the provision regarding superseding indictments. Rather than include delays caused by superseding indictments with the thirteen other categories of excludable time, the Act separately states, "The return of a superseding indictment against the eligible defendant shall extend the time for the trial to commence." N.J.S.A. 2A:162-22(a)(2)(b)(ii), R. 3:25-4(f).[18]  As we have

---

[18]  By contrast, under constitutional speedy trial jurisprudence, "the relevant interval" for a defendant's "Sixth Amendment speedy trial claim is from the first indictment or arrest to trial," not from the superseding indictment to trial for new charges. United States v. Black, 918 F.3d 243, 259 (2d Cir. 2019) (agreeing with the view of six other circuits); see also United States v. Battis, 589 F.3d 673, 679 n.5 (3d Cir. 2009) (holding that the "speedy trial right was not affected by the filing of a superseding indictment").  Also, the federal Speedy Trial Act addresses superseding indictments differently from the New Jersey statute.  Under the federal law, "[t]he filing of a superseding indictment does not affect the speedy-trial clock for offenses charged in the original indictment or any offense required under double jeopardy principles to be joined with the original offenses." United States v. Gonzales, 897 F.2d 1312,

noted, the 180-day clock counts the days before trial commences. And "a trial is considered to have commenced when the court determines that the parties are present and directs them to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial." N.J.S.A. 2A:162-22(a)(2)(b)(i). Although a superseding indictment can extend the 180-day clock by adding time to a defendant's pre-trial detention, the Act does not say by how much, or how a court decides. The legislative history does not answer those questions.[19]

But the Court Rule addresses how a court decides. Tracking the Act, the Rule states "the return of a superseding indictment . . . shall extend the time of the trial to commence." R. 3:25-4(f). However, the extension shall be limited:

_____

1316 (5th Cir. 1990). That rule "prevents the government from circumventing the speedy-trial guarantee by restarting the speedy-trial clock by obtaining superseding indictments with minor corrections." Ibid. "[N]ew Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment," but a new period does not run "when the later charge is merely a part of or only 'gilds' the initial charge." United States v. Andrews, 790 F.2d 803, 808-09 (10th Cir. 1986). Also, when a superseding indictment adds a new defendant, then the "speedy trial computation of the latest codefendant" governs all defendants. Henderson v. United States, 476 U.S. 321, 323 n.2 (1986); see also United States v. King, 483 F.3d 969, 973 (9th Cir. 2007) (adopting the rule that "the filing of a superseding indictment adding a new defendant . . . restarts the [Speedy Trial Act] clock for all defendants").

[19] The JCCJ Report proposed multiple categories of excludable time to accompany a 180-day deadline for trial, but it did not address superseding indictments.

"[t]he court shall schedule the trial to commence as soon as reasonably practicable." Ibid. To set that new date, the court shall "tak[e] into consideration" what is new in the superseding indictment and whether the prosecutor could have acted sooner. Ibid. Specifically, the court shall consider "the nature and extent of differences between the superseded and superseding indictments"; that includes "the degree to which the superseding indictment is based on information that was available at the time of the original indictment or that could have been obtained through reasonably diligent efforts at the time of the original indictment." Ibid.

The differences between the two indictments are relevant to assessing if the prosecutor needs more time to prepare for trial. And that need to prepare is what may justify delay. Cf. Washington, 453 N.J. Super. at 196 (noting that a case's complexity justifies excluding time under N.J.S.A. 2A:162-22(b)(1)(g) and R. 3:25-4(i)(7) because of the complexity's impact on "trial preparation" time).[20] How long the State has had the information supporting the new

_____

[20] A defendant may also need more time to prepare for trial after the return of a superseding indictment. If a defendant wants to extend the 180-day clock to prepare for trial, he or she may seek a continuance, but that would count as excludable time, N.J.S.A. 2A:162-22(b)(1)(d); R. 3:25-4(i)(4). If a prosecutor unreasonably delayed seeking a superseding indictment, a defendant may argue that it would be unfair to prolong his or her detention so she or he could have time to prepare to defend against the newly added or amended counts. In such a case, the court conceivably could adjourn the trial date for a period of

16

charges also affects its need, if any, for more time to prepare. And whether the prosecutor could have obtained information sooner concerns the unfairness to the defendant of extending time for the superseding indictment that a diligent prosecutor could have obtained earlier. Implicitly, the Rule addresses diligence not only in acquiring information, but also in bringing it before a grand jury.

In short, the court must weigh the demonstrated need for more time against the unfairness of granting it. In doing so, the court must be mindful of the concern of the Rule's drafters that superseding indictments should "not unduly delay a defendant's right to a speedy trial." Report of the Supreme Court Committee on Criminal Practice on Recommended Court Rules to Implement the Bail Reform Law, Part II: Pretrial Detention & Speedy Trial 63 (May 12, 2016) [hereinafter CPC Report II], https://njcourts.gov/courts/assets/supreme/reports/2016/bailreformlaw2016.pdf.[21]

_____

time to accommodate the defendant's needs without "extend[ing] the time for the trial to commence," N.J.S.A. 2A:162-22(a)(2)(b)(ii); R. 3:25-4(f), an equivalent amount of time.

[21] In his concurring and dissenting commentary, the Public Defender expressed particular concern "about the potential for abuse . . . by prosecutors who are otherwise not ready to proceed within the 180 day time frame," and obtain more time "[b]y simply going back to the grand jury for a superseding indictment." CPC Report II at 171-72. Although the Court did not adopt additional language the Public Defender proposed, the potential for abuse he

The Rule contemplates the court will do more than compare the two indictments. Some differences will surely be apparent on their face. But the State may need to show more to demonstrate how new charges affect the State's proposed trial evidence and witnesses, and the time it needs to prepare. And an additional submission may be needed to prove when the State obtained, and could have obtained, information supporting the new indictment and then presented it to a grand jury. Because the prosecutor has greater access to such evidence, and because the prosecutor is the one seeking a delay because of a superseding indictment, the prosecutor should bear the burden to justify the extension of time based on any superseding indictment. See J.E. ex rel. G.E. v. State, 131 N.J. 552, 569-70 (1993) (stating "the party with greater expertise and access to relevant information should bear" "the burdens of persuasion and production"); Romano v. Kimmelman, 96 N.J. 66, 89 (1984) (noting that "the burden of proof can vary depending upon the type of proceedings," the parties' "comparative interests[,] . . . litigational strengths or weaknesses[,] . . . access . . . to proof, and the objectives to be served by the evidence"); Cnty. of Essex v. First Union Nat'l Bank, 373 N.J. Super. 543, 555 (App. Div. 2004) (stating that a person relying on a fact generally bears the burden to establish it), aff'd

_____

identified should not be ignored. The Rule as drafted permits a court to address the issue directly.

in part and rev'd in part on other grounds, 186 N.J. 46 (2006); see also In re Will of Smith, 108 N.J. 257, 264 (1987) (characterizing the allocation of burdens of proof as a procedural matter "normally reserved for the courts"). And the defendant should have an opportunity to respond.

The decision setting the appropriate extension of time for a superseding indictment involves fact-finding, and a discretionary balancing of the need for time against fairness considerations; this balancing implicates the Criminal Part judge's expertise and familiarity with the case. Consequently, we would not disturb the court's decision unless its fact-finding lacked sufficient credible evidence in the record, see Forchion, 451 N.J. Super. at 482 (setting standard of review for fact-finding concerning the amount of excludable time), or the court's balancing resulted from an abuse of discretion, see State v. S.N., 231 N.J. 497, 514 (2018) (establishing abuse-of-discretion standard of review of detention decisions based in part on the trial court's developing expertise); State v. Tate, 220 N.J. 393, 404 (2015) (stating that an abuse-of-discretion standard of review is appropriately applied to a trial court decision based on "qualitative assessments").

With these principles in mind, we reverse the trial court's decision to add an additional 180-days. The court's decision does not command our deference because the court did not consider the relevant factors identified in the Court

Rule, and instead made a clear error in judgment by stacking another 180 days on top of the unexpired time that began after the initial indictment. That was an abuse of discretion. See S.N., 231 N.J. at 500 (defining an abuse of discretion as "relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment").

The State made no showing, and the court made no finding, regarding the "the nature and extent of the differences between the superseded and superseding indictments." Although new charges of sexual assault were added, the court did not consider if those charges would require significantly different proofs or witnesses. The State conceded it possessed information to support the new charges when it obtained the initial indictment. Absent evidence to the contrary, we assume no additional time was needed to prepare to try those new charges. As for the witness tampering charge, the State concedes it was aware of the supporting evidence in October 2018. Although that followed the initial indictment by eight months, the State provided no reason why it would not be prepared to try that charge along with the rest of the initial charges, given the extended periods of excludable time preceding the superseding indictment's return.

The State also does not explain, nor did the court address, why the prosecutor did not seek the superseding indictment until fifteen months after it secured information about the alleged witness tampering, and less than three weeks before the pre-trial conference. Even if the State needed more time to prepare for trial as a result of the superseding indictment (and we discern no basis for finding it did), it would be unfair to extend defendant's time in pre-trial detention to accommodate that need, given the State's evident failure to act with reasonable promptness.

In any event, the prosecutor declared at the pretrial conference that she was ready to proceed to trial. In so doing, the prosecutor conceded that she needed no additional time from that moment forward to prepare to try the new charges in the superseding indictment. Thus, there was no basis "to extend the time for the trial to commence" beyond that date.

Yet, the court, without explanation, extended the time to commence trial by another 180 days. What is more, the court did not simply turn back the clock to zero, leaving the 180-day clock to run anew from the date of the superseding indictment's return for the commencement of trial or defendant's conditioned release (barring the prosecutor's additional showing). Rather, the court stacked another 180 days on top of what was left of the initial 180-day period. That resulted in requiring a total of 360 days in detention (plus

21

detention during excludable time) before defendant would be eligible for release under the 180-day clock provision.

Doing so was inconsistent with the Act's design and its speedy trial goals. The Act establishes the 180-day clock for every case. Had defendant first been indicted in January 2020 when the superseding indictment was returned, he would have been eligible for release after 180 days not counting excludable time. Thus, at the extreme outer limit, if a court extends time because of a superseding indictment under N.J.S.A. 2A:162-22(a)(2)(b)(ii) and R. 3:25-4(f), the new release date should be no more than 180 days, not counting excludable time, from the superseding indictment's return.[22]

Therefore, we reverse the trial court's order extending the 180-day clock by an additional 180 days. Given the prosecutor's declaration of readiness nineteen days after the superseding indictment's return, the prosecutor could not justify needing anything more than nineteen days. But, even that may have

---

[22] Hypothetically, if the State obtained a superseding indictment 50 days after an original indictment's return (not counting excludable time) — that is, 130 days before a defendant's original release eligibility — the court could add no more than 50 days to the defendant's remaining 130 days. Anything more would impose a period of detention greater than 180 days following the superseding indictment's return. If, in our hypothetical case, the court tacked another 180 days (as the trial court did here) onto the 130 days remaining in the original detention period, the defendant could be detained up to 310 days post-superseding-indictment, and, in total, up to double the 180-day post-indictment period the Act contemplates.

been too much, because there is no evidence in the record demonstrating the need for any additional time, and because it would be unfair to defendant given the prosecution's unexplained delays. However, we need not remand for the court to calculate the precise extension — up to nineteen days — because, regardless of the calculation, defendant's 180-day clock would expire after trial commenced on July 6, 2021. And the 180-day clock qualifies a defendant for release only if it expires before commencement of trial.

B.

We next consider defendant's argument regarding the two-year clock.

Defendant argues that a prosecutor cannot be "ready" to try a case if there is no courtroom, jury, or judge available, as during the COVID-19 suspension. So, though the prosecutor was ready in February 2020, she was not ready after the April 6, 2020 trial date came and went. We disagree.

Apart from the prosecutor-readiness issue, we note that the two-year clock differs from the 180-day clock in three ways: when it starts; how days are counted; and what a defendant gains when it expires. First, the two-year clock starts running from the date of detention (not the date of indictment as with the 180-day clock). N.J.S.A. 2A:162-22(a)(2)(a); R. 3:25-4(d)(1). Second, the two-year clock counts days in detention after subtracting excludable time only if attributable to defendant, unlike the 180-day clock,

23

which subtracts all excludable time; and the Court Rule describes what time is attributable to a defendant. See N.J.S.A. 2A:162-22(a)(2)(a); R. 3:25-4(d)(1), -4(d)(2). Third, while a defendant is not assured release if the 180-day clock runs — if the State persuades the court that the prosecution has not unreasonably delayed trial and that a defendant poses an uncontrollable risk of danger to public safety or the criminal justice process — the two-year clock includes no such caveat; release is mandated albeit with conditions. N.J.S.A. 2A:162-22(a)(2)(a); R. 3:25-4(d)(1).

But, most importantly for this appeal, while the 180-day clock triggers potential release if trial does not commence after it expires, the two-year clock triggers release only if the prosecutor is not ready to start trial. The two-year clock provision states:

> Notwithstanding any other provision of this section, an eligible defendant shall be released from jail pursuant to [N.J.S.A. 2A:162-17] after a release hearing if, two years after the court's issuance of the pretrial detention order for the eligible defendant, excluding any delays attributable to the eligible defendant, the prosecutor is not ready to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial.
>
> [N.J.S.A. 2A:162-22(a)(2)(a).]

The Act's plain language clearly conditions relief on a prosecutor's lack of readiness to proceed (and not the availability of the court to try the case).

24

See State v. Lopez-Carrera, 245 N.J. 596, 613 (2021) (stating "[i]f the language of a statute is clear, a court's task is complete"). Furthermore, the legislative history leaves no doubt about the two-year clock's intended meaning. Ibid. (stating a court may consider legislative history to discern legislative intent if statutory text is ambiguous). The two-year clock was added as a Senate floor amendment. Its sponsor explained he intended to add another limit on the length of detention — but one "measured by the prosecutor's readiness":

> The amendments additionally add a final cap, of two years, excluding any delays attributable to the defendant, following the court's issuance of a pretrial detention order, in which a trial must begin against an indicted eligible defendant, measured by the prosecutor's readiness to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial; if trial is not commenced at this point due to lack of prosecutor readiness, the eligible defendant would be released from jail after a release hearing pending further action on the trial.
>
> [Statement to Second Reprint of S. 946, Senate Floor Amendments by Senator Norcross 2 (July 31, 2014), [hereinafter Floor Amendments Statement].][23]

---

[23] An identical floor amendment was offered to the Assembly version of the legislation, and the Assembly sponsor expressed the identical intention. See Statement to Second Reprint of A. 1910, Assembly Floor Amendments of Assemblyman Burzichelli 2 (August 4, 2014).

The implementing Court Rule tracks the Act's language by providing that a defendant "shall be released" if the two-year clock expires and the prosecutor is "not ready," R. 3:25-4(d)(1), but the Rule adds that a defendant "shall not be released" if the prosecutor is "ready," R. 3:25-4(d)(3). The first provision states:

> [a]n eligible defendant <u>shall be released from jail</u> . . . upon conditions set by the court, after a release hearing if, excluding any delays attributable to the defendant, two years after the court's issuance of the pretrial detention order pursuant to R. 3:4A or R. 3:26-2(d)(1) for the eligible defendant . . . <u>the prosecutor is not ready</u> to proceed to voir dire or to opening argument, or to proceed to the hearing of any motions that had been reserved for the time of trial.
>
> [R. 3:25-4(d)(1) (emphasis added).]

The second provision states:

> An eligible defendant <u>shall not be released from jail</u> . . . pursuant to subparagraph (1) of this paragraph if, on or before the expiration of the applicable period of detention, <u>the prosecutor has represented that the State is ready to proceed</u> to voir dire or to opening arguments, or to proceed to the hearing of any motions that had been reserved for trial.
>
> [R. 3:25-4(d)(3) (emphasis added).]

The Court Rule also states how the prosecutor may express his or her readiness. "The prosecutor's statement of readiness shall be made on the record in open court or in writing." <u>Ibid.</u>

26

But, neither the Act (including its legislative history) nor the Rule explains how to determine if a prosecutor is ready or "not ready to proceed." And neither the Act nor the Rule says "what happens if a prosecutor is ready to proceed but the court is not, e.g. there is no judge available to try the case." CPC Report II at 62. The Criminal Practice Committee explained that it "did not address this because The Bail Reform Law did not." Ibid. Yet, these two questions — how to show readiness and what happens if the prosecutor is ready but the court is not — lie at the heart of defendant's argument for release under the two-year clock.

Although defendant conceded that when the prosecutor stood up at the pretrial conference in February 2020, she was ready to try the case in April 2020, defendant now argues the prosecutor's readiness disappeared when the trial was postponed. We acknowledge a prosecutor may be ready to try a case on an early date, but — because of intervening commitments or unavailable witnesses — may not be ready to the try the case on a later date. If a judge sets a trial date after a prosecutor states she or he is ready, and the date is later postponed, a court may reasonably request a restatement of readiness. We also have no doubt that a court may in its discretion require appropriate assurances to support a prosecutor's conclusory statement of readiness. But, neither the

27

Act nor the Rule requires that a court do so routinely.[24] And we shall not disturb the trial court's order on these grounds, because at the hearing on defendant's motion, the prosecutor insisted she remained ready to try the case when the COVID-19 suspension was lifted, and defendant did not challenge the prosecutor's earlier statement of readiness.

Defendant also contends that a prosecutor cannot be ready to proceed if there is no court or jury to present the case to. We disagree. As noted, the sponsor of the two-year clock expressed the intent to create a "final cap." Floor Amendments Statement at 2; see also In re Request to Release Certain Pretrial Detainees, 245 N.J. 218, 232 (2021) (stating that the "two-year limit is a protective measure to guard against unduly prolonged detention"). But, the sponsor intended, and the statutory language provides, that the "final cap" is "measured by the prosecutor's readiness." Floor Amendments Statement at 2; see also Request to Release, 245 N.J. at 231 (noting that the Act "sets an

---

[24] By contrast, under New York's speedy trial statute, when a prosecutor declares that he or she is ready for trial, "the court shall make inquiry on the record as to their actual readiness." N.Y. Crim. Proc. Law § 30.30(5) (2020); see also People v. Chavis, 695 N.E.2d 1110, 1113 (N.Y. 1998) (stating that the prosecution "must demonstrate an actual readiness to proceed with trial at the time they declare readiness"). If the court determines that the prosecution is not ready, then the prosecutor's prior claim of readiness is invalid. N.Y. Crim. Proc. Law § 30.30(5) (2020). The prosecutor's statement of readiness must be accompanied with a certification of good faith regarding various disclosure requirements. Ibid. It is not for us to engraft such requirements onto the Act, or the Court Rule.

overall limit of two years for pretrial detention, excluding delays attributable to the defendant, <u>if the prosecutor is not ready to proceed to trial</u>") (emphasis added).

The Court Rule also implies that an immediately available courtroom is not essential to a prosecutor's expression of readiness. The Rule provides that the prosecutor may state he or she is ready "on the record in open court <u>or in writing</u>." <u>R.</u> 3:25-4(d)(3) (emphasis added). A writing may be made without an available courtroom or a set trial date. <u>Cf.</u> <u>R.</u> 3:25-2 (noting that the court shall fix a date for trial upon a defendant's motion accompanied by defense counsel's "certification that the defense is ready to proceed to trial").

Defendant contends we must fill the gap in the Act regarding what happens if the prosecutor is ready and the courts are not. He argues that to save the Act from constitutional infirmity — a deprivation of substantive due process — we must read it to provide for release. We disagree. The Supreme Court addressed a similar argument in <u>Request to Release</u>. There, the movants argued that the defendants' continued detention during the COVID-19 suspension of trials "would render the Act punitive, rather than regulatory," and thereby violate due process. <u>Request to Release</u>, 245 N.J. at 230. The movants sought release of all defendants not charged with first-degree crimes who were detained six months or longer, subject to exceptions; and new

29

detention hearings for those charged with first-degree crimes. The Court found no basis in the Act to do so, and declined to engage in "judicial surgery" that would "work a wholesale change in an otherwise constitutional statute to remedy circumstances best assessed on a case-by-case basis." Id. at 234.

The Court held that "[w]hether the length of detention violates due process . . . 'requires assessment on a case-by-case basis' because due process is a flexible concept that 'does not necessarily set a bright line limit for length of pretrial confinement.'" Id. at 231 (quoting United States v. Orena, 986 F.2d 628, 630 (2d Cir. 1993)). The Court held that such individualized due process determinations should be based on "'the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits,'" as well as "'the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.'" Id. at 232 (quoting United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986)). A "fact-specific inquiry" enables a court to "balance the relevant factors and assess the level of risk" a defendant presents. Id. at 226.

Likewise, we shall not alter the two-year clock's terms with a strained interpretation of prosecutorial readiness. We do not minimize the burden

imposed on defendant by his extended period of pre-trial detention. In response to an extraordinary public health crisis, the Supreme Court suspended criminal trials, including defendant's, despite the prosecutor's readiness. We do not deal with a case of commonplace court congestion preventing a trial-ready case from proceeding. Defendant may bring an individual due process challenge based on the length of his detention, but he must do so in the first instance before the trial court.[25]

Finally, although we affirm the trial court's order denying defendant's request for release based on the two-year clock, we disapprove of the court's declaration that the two-year clock and the 180-day clock shall be coterminous. The court provided no reason for that ruling, and we can supply none, because different events start and stop the two clocks, and the clocks count the time in between differently.

## C.

We also decline to address defendant's contentions — expressed only in his chart of the various excludable time orders — that the trial court erred in characterizing certain periods of time as excludable. Two examples are noteworthy because they involve lengthy periods of time.

---

[25] Defendant was also free to move under N.J.S.A. 2A:162-19(f) to reopen his detention hearing based on a change in circumstances. See Request to Release, 245 N.J. at 236.

First, defendant contends that the period between April 10, 2018 and May 7, 2018 or perhaps June 4, 2018 (his contentions are not entirely clear), should have been non-excludable, although the court attributed it to his request for a continuance. See N.J.S.A. 2A:162-22(b)(1)(d); R. 3:25-4(i)(4). Defendant argues the prosecutor's failure to provide timely discovery prompted his request. See N.J.S.A. 2A:162-22(b)(2); R. 3:25-4(i) (stating that the prosecutor's "failure . . . to provide timely and complete discovery shall not be considered excludable time unless the discovery only became available after the time established for discovery").

Second, defendant contends the period between January 23, 2019 and May 13, 2019 should have been excluded because the time related to unwarranted delays in securing records (that defendant sought) from the Division of Child Protection and Permanency and delays in the court's subsequent review of those documents before releasing them to defendant. Defendant challenges the court's order excluding this time for good cause. N.J.S.A. 2A:162-22(b)(1)(l); R. 3:25-4(i)(12).

We recognize that if defendant prevailed on these challenges, he would have accumulated over 180 days of non-excluded time long before the 180-day clock was frozen by the suspension of criminal jury trials. But, we do not address these claims for multiple reasons. Most important, defendant did not

32

formally brief them (the arguments are found only in defendant's chart).  Just as we are not obliged to address an argument raised only in a footnote, <u>Almog v. Israel Travel Advisory Serv., Inc.</u>, 298 N.J. Super. 145, 155 (App. Div. 1997), we are not obliged to address an argument raised only in a chart attached to the brief, <u>see</u> <u>R.</u> 2:6-2(a)(6) (describing mode of presenting legal argument in appellant's brief).  Defendant also did not raise the points in his initial brief supporting his motion for leave to appeal.  As he raised the points only in a simultaneously-filed supplemental brief, the State did not have a fair opportunity to respond.  In that respect, the arguments are like those raised for the first time in a reply brief, which we generally decline to consider.  <u>See</u> <u>N.J. Republican State Comm. v. Murphy</u>, 243 N.J. 574, 615 n.37 (2020).

Lastly, defendant has not provided us with a sufficient record to enable us to engage in meaningful review.  We are not presented with defendant's continuance request, the basis defendant gave for the request, the nature of the discovery that allegedly prompted the request, defendant's request for Division records, the records themselves, the relevant transcripts, the excludable time orders, or the court's statements of reasons.  We are not "obliged to attempt review of an issue when the relevant portions of the record are not included." <u>Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C.</u>, 381 N.J. Super. 119, 127 (App. Div. 2005).

33

III.

In sum, we reverse the trial court's order extending the 180-day clock by an additional 180-days under the Act's superseding indictment provision; and we affirm the trial court's order denying defendant's release under the two-year clock.

Affirmed in part; reversed in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2220-20